IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

SAMSON TUG AND BARGE CO., INC.,  )
an Alaska Corporation            )
                                 )
        Plaintiff/Appellant      )        Case Number:  A03-006 CV
                                 )                      Admiralty JWS
    vs.                          )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Defendant/Appellee.      )

## PLAINTIFF'S MOTION IN LIMINE

Plaintiff, by undersigned counsel, hereby moves for an order in limine, precluding

Defendant from offering evidence in two areas based on its conduct in discovery and its failure

to preserve certain records. The order in limine sought herein has two aspects, as follows:

1.      Precluding Defendant from calling witnesses to offer testimony in an area as to

which discovery, including properly noticed 30(b)(6) depositions, was sought unsuccessfully by

Plaintiff; and

2.      Precluding Defendant from relying on theories and positions which would have

been either supported or refuted by documentary records known to have existed at one time in

the sole possession of the government, and sought unsuccessfully by Plaintiff.

### Background

This case arises from a government contract between Plaintiff, Samson Tug and Barge

Co., Inc. ("Samson") and the United States ("Government") whereby Samson contracted to

provide barge transportation of cargo to and from the Government's defense installation at Adak,

Alaska for the period October 1, 1995 through September 30, 1997 ("the Contract"). The

Contract was a requirements contract whereby the Government agreed to ship all cargo suitable

for barge transportation with Samson (subject to certain limited exceptions not at issue here). In

breach of the Contract, a substantial amount of cargo, the exact amount of which remains

unknown (and for reasons set forth below, unknowable), which was suitable for barge

transportation was shipped by air, depriving Samson of revenue to which the Contract entitled it.

### The Factual and Legal Bases for Samson's Motion In Limine

1. The Government's Failure to Produce Documents Pertaining to, or A Witness Responsible For, The Decisions to Ship Barge-Suitable Cargo by Air.

Since the earliest stages of discovery in this case, Samson has sought to depose, through

30(b)(6) depositions, Government officials responsible for making decisions regarding the mode

of transportation of cargo, i.e., barge versus air, to and from Adak during the Contract period.[1]

Samson has also sought the production of documents relating to such decisions. The

Government has failed to produce for deposition any witnesses purporting to have first-hand

knowledge of the facts and circumstances surrounding these decisions. Additionally, the

Government has failed to produce documents reflecting the facts and circumstances surrounding

those decisions.

Discovery has now closed by virtue of this Court's Order. It would be fundamentally

unfair, and a violation of the Government's discovery obligations, for the Government to be

allowed to produce for the first time at trial either witnesses to testify as to or documents relating

to the facts and circumstances surrounding these mode of transportation decisions.

Federal Rule of Civil Procedure 37(c)(1) provides that:

> A party that without substantial justification fails to disclose information
> required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery
> as required by 26(e)(2), is not, unless such failure is harmless, permitted to
> use as evidence at a trial, at a hearing, or on a motion any witness or
> information not so disclosed. In addition or in lieu of this sanction, the court,

---

[1] The pertinent pages from the 30(b)(6) notice are attached as Exhibit 1.

on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

F.R.C.P. 37(c)(1) 2008.

Where, as here, a party fails to disclose requested information, the appropriate remedy is to preclude that party from presenting such information at trial. *Pharmacia Corp. Motor Carrier Services Corp.*, slip copy 2007 WL 1816044 (D.N.J. 2007). Sanctions under Rule 37(c)(1) do not require a showing of bad faith or a violation of a court order. *Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1108 (9th Cir. 2001). The sanction of precluding the undisclosed evidence is self-executing or automatic. *See Id.*

The Government never produced a witness to testify on deposition regarding decisions over which mode to ship cargo, a critical issue in the case, despite numerous and unequivocal requests. The Government's failure to provide a FRCP 30(b)(6) witness is a reason to preclude the evidence which is the subject of this Motion. *See Veritas Operating Corp. v. Microsoft Corp.*, slip copy 2008 WL 657936 (W.D. Wash. 2008); *Colbert v. City of Nevada City*, slip copy 2007 WL 3010424 (E.D. Cal. 2007); *Estate of Wallace v. City of Los Angeles*, 229 F.R.D. 163 (C.D. Cal. 2005); *United States v. Phillip Morris*, slip copy 2005 WL 729434 (D.D.C. 2005) (finding that failure to produce knowledgeable 30(b)(6) witness or responsive 30(b)(6) testimony precluded use of evidence that was requested through 30(b)(6) deposition).

2.    The Government's Failure to Produce Full and Complete Records of Flights to and from Adak during the Contract Period.

As early as June, 1997, during the Contract period, when Samson came to believe that the Government was diverting barge-suitable cargo to air transportation, up to and including last year, Samson has sought records that would show the following:[2]

1.    All the air flights to and from Adak during the Contract period;

2.    A description of the cargo shipped by the Government on these air flights;

3.    The volume of cargo shipped by the Government on these air flights.

While some records showing incomplete information regarding the foregoing have been intermittently produced, the production has fallen far short of being comprehensive on this cardinal issue. While the incomplete records are sufficient to demonstrate that material diversion of cargo from the mode contractually required did occur, the records do not remotely suffice to permit a complete analysis of the amount of diverted cargo.

It is clear that such records existed at one time. All cargo carrying flights to and from Adak were accompanied by cargo manifests describing the cargo and setting forth its volume.[3] These manifests have not been produced and apparently cannot be, or at least have not been located, nor have other records that comprehensively contain the same information, although partial compilations of data from some of the underlying records have been produced.

A party's duty to preserve records begins before it has actual notice of litigation, but when it has notice that the evidence is relevant to present or future litigation. *Fujitsu Ltd. v.*

[2]  See Exhibit 2 consisting of FOIA requests to various Government agencies concerning such records. In addition, Samson filed numerous other FOIA requests seeking those records in 2000 and 2001 and has persistently sought such records through discovery in this case. In response to the second FOIA request the Government created and produced a computer generated chart entitled "FOIA Request Adak, Alaska Movement," suggesting that source documentation for the creation of the chart must have existed at that time. It was not produced, however. Exhibit 3.

[3]  Several Government witnesses have so testified in depositions.

- 4 -

*Federal Express Corp.*, 247 F.3d 423, 436 (2nd Cir. 2001). In the context of a government

contracts claim under the Contract Disputes Act, notice of future litigation may occur, as it did in

this case, well before receipt of a claim by the contracting officer, "'but also . . . [during] that

period before the litigation when a party reasonably should know that the evidence may be

relevant to anticipated litigation.'" *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 60

(2003), *quoting Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *see also*

*AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 440 (2007) (finding duty to preserve

evidence that may be relevant to anticipated litigation). As applied to the facts at hand, given

Samson's surfacing of the issue of possible breach through diversion during performance of the

contract, and its related FOIA requests, the Government was put on notice regarding the

possibility, indeed the likelihood, of future litigation and the need to preserve the records that are

the subject matter of this Motion.

Courts in this Circuit have "broad discretionary power to permit a jury to draw an adverse

inference from the destruction or spoliation against the party or witness responsible for that

behavior." *Glover v. Bic Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993), *citing Akiona v. United*

*States*, 938 F.2d 158 (9th Cir. 1991). Moreover, the law in this Circuit does not require a finding

of bad faith as a prerequisite to such an inference, but rather "simple notice of 'potential

relevance to the litigation.'" *Id.* The rationale behind sanctions for spoliation is twofold. It

prevents a party that destroyed evidence from benefiting from it and it deters such conduct in the

future. *Akiona*, at 160.

This discretion to order sanctions is by no means limited to jury trials. A recent case

from the United States Court of Federal Claims, also involving a bench trial for a Contract

Disputes Act claim, provides a good example of a spoliation remedy in the context of a

government contracts diversion case. *United Medical Supply Co. v. United States*, 77 Fed. Cl. 257 (2007). United Medical Supply (hereinafter "UMS") entered into a requirements contract with an agency of the Department of Defense to provide medical supplies for a number of Medical Treatment Facilities in the Texas and Oklahoma. *Id.* at 259. When UMS discovered that the Government was breaching its contract by diverting required purchases from it to other vendors, it initiated legal action to include filing a FOIA request to determine the extent of the diversion. *Id.* Despite the FOIA request and a complaint based on a bankruptcy claim that eventually made its way to the Court of Federal Claims, the Government did not take appropriate measures to notify all of the applicable facilities to preserve records of orders of medical supplies. *Id.* at 260-64. As a result, a number of facilities inadvertently destroyed relevant records before any sort of discovery request or order had been issued. *Id.* This rendered UMS unable to determine how much of the orders for medical supplies were diverted in breach of its contract. Finding a lack of appropriate diligence in ensuring preservation of the records, the Court sanctioned the Government by prohibiting the Government from cross-examining UMS's expert "to the extent he or she . . . attempts to extrapolate the total number of diversions." *Id.* at 276. Likewise, the Court prohibited the Government's expert from testifying based on the destroyed evidence as well as ordering payment of costs related to the spoliation to UMS. *Id.*

Similarly, with Samson, the Government knew that records relating to diverted cargo were an issue even before the Contract concluded. Despite the obvious signals, it appears that not only were the Government's efforts to preserve records insufficient, there is no indication that the Government undertook any efforts to preserve records whatsoever.[4] The records to

---

[4] Despite being served with Interrogatories requesting a detailed explanation as to the Government's actions in preserving and locating missing records, no satisfactory explanation has been provided.

prove Samson's claim in its entirety existed at one time and they existed at a time when it should have been obvious that such records might be relevant to anticipated litigation.

In response to the FOIA requests, the DOD produced a compilation of data about air cargo flights and volumes of cargo carried on some, but not all of those flights, but the underlying records or data from which that compilation was drawn were never produced. Similarly, in the course or discovery, the Government produced some additional incomplete compilations, again without producing the complete underlying records or database from which they were drawn. Thus, the Government has made it impossible for Samson to determine whether the compilations are accurate or complete, and has precluded Samson from accessing the more comprehensive data in the underlying records, such as cargo manifests, that would show how much and what types of cargo were transported by air. Just as in *United Medical Services*, when a party cannot locate records known to have existed at one time when it was on notice of anticipated litigation, and when those records are as important to the case as the missing records are to this one, a sanction similar to the one imposed in the UMS case is appropriate.

In other government contracts decisions involving the scope of the Government's breach by diversion, the adequacy of records has been a recurring problem. While not addressing the issue in terms of sanctions for spoliation, decisions have had the effect of prohibiting the Government from taking advantage of the lack of records in assessment of damages. The overriding principle in diversion cases lacking sufficient records is that "'[i]f a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery,' and the board's duty is to 'make a fair and reasonable approximation of the damages.'" *Ace Federal Reporters v. Barram*, 226 F.3d 1329, 1333 (Fed. Cir. 2000) *quoting*

- 7 -

*Locke v. United States*, 283 F.2d 521, 524 (1960).  *See also T&M Distributors*, ASBCA No.

51279, 2001-2 B.C.A. ¶ 31,442, June 5, 2001; *Pacific Technical Enterprises, Ltd.*, ASBCA No.

17087, 74-2 BCA ¶ 10679, June 5, 1974.

Based on the foregoing, Plaintiff requests that the Court rule in limine that the

Government be precluded from 1) calling any witness to testify based on first hand knowledge as

to the facts and circumstances surrounding the decision as to mode of transportation, and 2)

presenting any theory of defense as to liability or damages that would be either supported by, or

possibly refuted by, the missing documents concerning cargo shipped by air.

## CONCLUSION

For the foregoing reasons, Plaintiff hereby moves for an order in limine.

Respectfully submitted,

/s/ Richard D. Gluck

Dated:  March 31, 2008    Richard D. Gluck
Harold G. Bailey, Jr.
Garvey Schubert Barer
1000 Potomac Street, NW, 5th Floor
Washington, DC  20007
Counsel for Samson Tug and Barge Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2008, a copy of Plaintiff's Motion In Limine was

served by first class mail, postage prepaid to the following:

Jeanne M. Franken, Esq.
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
7-5393 Federal Building
P.O. Box 36028
San Francisco, CA  94102-3463

United States Attorney
Federal Building and U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567

/s/ Richard D. Gluck
Richard D. Gluck

# EXHIBIT 1

### Samson 30(b)(6) Notice:  Areas of Inquiry

(1)  For the period October 1, 1995, through September 30, 1997:

(a) all data, electronically or digitally recorded information, documents or records of any nature which were created, delivered, received, stored compiled, or maintained, and which, in the ordinary course, should have been created, delivered, received, stored and/or maintained, by or on behalf of the United States Government, pertaining or relating to the transportation of military or military sponsored cargo transported within the Defense Transportation System to or from NAF Adak and points in the continental United States, either directly or by transshipment, including, without limitation: any and all data, data compilations or summaries, electronically or digitally stored information, communications, correspondence, electronic mail, message traffic, documents or records, including (without limitation) those reflecting, relating or referring to review, consideration, discussion, designation, justification, selection and/or approval by Government personnel of the particular mode of transportation of any and all such cargo (e.g., air or ocean, and/or via military or civilian-owned or controlled aircraft or vessels); the criteria applied and information considered by such personnel in selecting such transportation mode; and TCMD records, cargo manifests, bills of lading, descriptions of cargoes, and weights of cargo, and all communications and memoranda pertaining to such cargo;

(b) the decisions, deliberations, orders, directions, actions, rules, protocols, policies, practices and procedures of the United States Government pertaining or relating to selection of the particular modes of transportation of any and all such cargo (e.g., air or surface, and transport via military vs. civilian assets), including (without limitation) the

extent to which the same were or were not consistent with past decisions, actions,

practices and procedures during the period between January 1, 1993 and September 30,

1997;

(c) the criteria applied and information considered by such personnel in selecting

such transportation modes;

(d) any relationship between the Government's selection of the mode(s) of

transportation for such cargo, and the planning and implementation of the closing of NAF

Adak; and

(e) the identity and current whereabouts of all Government personnel who were

involved or participated in such transportation mode selection decisions and in

implementing them, and of all other persons with knowledge of any of the foregoing.


(2)    For the period October 1, 1995, through September 30, 1997:

(a) all data, electronically or digitally recorded information, documents or records

of any nature which were created, delivered, received, stored, complied and/or

maintained, and which, in the ordinary course, should have been created, delivered,

received, stored, compiled and/or maintained, by or on behalf of the United States

Government, pertaining or relating to the transportation of military or military sponsored

cargo transported by either civilian or military aircraft to or from NAF Adak and points

in the continental United States, either directly or by transshipment, including, without

limitation, any and all TCMD records, cargo manifests, descriptions of cargoes, and

weights of cargo, and data, data compilations electronically or digitally recorded

information, correspondence, communications, electronic mail, message traffic,

2

# EXHIBIT 2

LAW OFFICES

# GARVEY, SCHUBERT & BARER

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

WASHINGTON, D.C.
FIFTH FLOOR
1000 POTOMAC STREET N.W.
WASHINGTON, D.C. 20007
(202) 965-7880

EIGHTEENTH FLOOR
SECOND & SENECA BUILDING
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101-2939
(206) 464-3939

FAX. (206) 464-0125

PLEASE REPLY TO SEATTLE OFFICE

PORTLAND
ELEVENTH FLOOR
121 S.W. MORRISON STREET
PORTLAND, OREGON 97204-3141
(503) 228-3939

Voice Mail Ext. 1364

June 23, 1997

*VIA CERTIFIED MAIL*

Military Sealift Command
WNY Bldg. 210
901 M Street, S.E.
Washington, D.C. 20398-5540

    ATTN:    Greg Dawson
               Margaret Sprague

    RE:       <u>Freedom of Information Act Request</u>

Dear Mr. Dawson and Ms. Sprague:

Under the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, we are requesting that you send us copies of the following records:

    1.    Any and all records of air, land or ocean shipments or transportation of cargo, by Military Traffic Management Command ("MTMC"), between Adak, Alaska and the Pacific Northwest, from the inception of Contract No. RFPN 62387-95-R-8150 through the present; and

    2.    Any and all records of air, land or ocean shipments or transportation of cargo, by MTMC, between Adak, Alaska and Anchorage, Alaska, from the inception of Contract No. RFPN 62387-95-R-8150 through the present.

We assume that all records pertaining to this request are available to you and that our request is properly directed to your attention. If there are any records located at another office, please inform us and we will make a separate request.

We agree to pay reasonable copying charges or search fees, but we request that you notify us before incurring charges or fees in excess of $100.00. If all or any part of this request is denied,

Greg Dawson
June 23, 1997
Page 2


please notify us of the specific exemptions that you think
justify refusal to release the information. We reserve the right
to appeal the withholding of any information.

Please call me if you have any questions regarding this request.

Very truly yours,

GARVEY, SCHUBERT & BARER

By
      Wendie L. Wendt
      Paralegal


0316584.WP

LAW OFFICES

# GARVEY, SCHUBERT & BARER

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

WASHINGTON, D.C.
FIFTH FLOOR
1000 POTOMAC STREET N.W.
WASHINGTON, D.C. 20007
(202) 965-7880

EIGHTEENTH FLOOR
SECOND & SENECA BUILDING
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101-2939
(206) 464-3939

PORTLAND
ELEVENTH FLOOR
121 S.W. MORRISON STREET
PORTLAND, OREGON 97204-3141
(503) 228-3939

FAX: (206) 464-0125

PLEASE REPLY TO SEATTLE OFFICE

Voice Mail Ext. 1364

June 20, 1997

VIA CERTIFIED MAIL

Military Traffic Management Command
Nassif Bldg.
5611 Columbia Pike
Falls Church, VA 22041

   ATTN:   Han Lam, FOIA Officer

   RE:   Freedom of Information Act Request

Dear Ms. Lam:

Under the provisions of the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552, we are requesting that you send us copies of the
following records:

1.   Any and all records of air, land or ocean shipments or
     transportation of cargo, by Military Traffic Management
     Command ("MTMC"), between Adak, Alaska and the Pacific
     Northwest, from the inception of Contract No. RFPN 62387-95-
     R-8150 through the present; and

2.   Any and all records of air, land or ocean shipments or
     transportation of cargo, by MTMC, between Adak, Alaska and
     Anchorage, Alaska, from the inception of Contract No. RFPN
     62387-95-R-8150 through the present.

We assume that all records pertaining to this request are
available to you and that our request is properly directed to
your attention.  If there are any records located at another
office, please inform us and we will make a separate request.

We agree to pay reasonable copying charges or search fees, but we
request that you notify us before incurring charges or fees in
excess of $100.00.  If all or any part of this request is denied,
please notify us of the specific exemptions that you think

Han Lam
June 20, 1997
Page 2


justify refusal to release the information. We reserve the right
to appeal the withholding of any information.

Please call me if you have any questions regarding this request.

Very truly yours,

GARVEY, SCHUBERT & BARER

*Wendie L. Wendt*

By
     Wendie L. Wendt
     Paralegal


0316423.WP

LAW OFFICES

# GARVEY, SCHUBERT & BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

WASHINGTON, D.C.
FIFTH FLOOR
1000 POTOMAC STREET N.W.
WASHINGTON, D.C. 20007
(202) 965-7880

EIGHTEENTH FLOOR
SECOND & SENECA BUILDING
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101-2939
(206) 464-3939

FAX: (206) 464-0125

PLEASE REPLY TO SEATTLE OFFICE

PORTLAND
ELEVENTH FLOOR
121 S.W. MORRISON STREET
PORTLAND, OREGON 97204-3141
(503) 228-3939

Voice Mail Ext. 1364

September 18, 1997

<u>VIA CERTIFIED MAIL</u>

Naval Air Systems Command
1421 Jefferson Davis Highway
Arlington, VA  22243-5120

> ATTN:    *FOIA Officer*

> RE:    <u>**Freedom of Information Act Request**</u>

Dear Sir/Madam:

Under the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, we are requesting that you send us copies of the following records:

1.    Records of air or ocean shipments or transportation of cargo, by Naval Air Systems Command ("NASC"), between Adak, Alaska and the Pacific Northwest, from the inception of Contract No. RFPN 62387-95-R-8150 through the present; and

2.    Records of air or ocean shipments or transportation of cargo, by NASC, between Adak, Alaska and Anchorage, Alaska, from the inception of Contract No. RFPN 62387-95-R-8150 through the present.

We assume that all records pertaining to this request are available to you and that our request is properly directed to your attention.  If there are any records located at another office, please inform us and we will make a separate request.

We agree to pay reasonable copying charges or search fees, but we request that you notify us before incurring charges or fees in excess of $100.00.  If all or any part of this request is denied, please notify us of the specific exemptions that you think justify refusal to release the information.  We reserve the right to appeal the withholding of any information.

Naval Sea Systems Command
September 18, 1997
Page 2


Please call me if you have any questions regarding this request.

Very truly yours,

GARVEY, SCHUBERT & BARER

By

    Wendie L. Wendt
    Paralegal


0330534.WP

*WWC*

LAW, OFFICES
# GARVEY, SCHUBERT & BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

WASHINGTON, D.C.
FIFTH FLOOR
1000 POTOMAC STREET N.W.
WASHINGTON, D.C. 20007
(202) 965-7880

EIGHTEENTH FLOOR
SECOND & SENECA BUILDING
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101-2939
(206) 464-3939

PORTLAND
ELEVENTH FLOOR
121 S.W. MORRISON STREET
PORTLAND, OREGON 97204-3141
(503) 228-3939

FAX: (206) 464-0125

PLEASE REPLY TO SEATTLE OFFICE

Voice Mail Ext. 1364

September 18, 1997

VIA CERTIFIED MAIL

Naval Sea Systems Command
2531 Jefferson Davis Highway
Arlington, VA  22242-5160

     ATTN:    *FOIA Officer*

     RE:    <u>Freedom of Information Act Request</u>

Dear Sir/Madam:

Under the provisions of the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552, we are requesting that you send us copies of the
following records:

1.    Records of air or ocean shipments or transportation of
cargo, by Naval Sea Systems Command ("NSSC"), between Adak,
Alaska and the Pacific Northwest, from the inception of
Contract No. RFPN 62387-95-R-8150 through the present; and

2.    Records of air or ocean shipments or transportation of
cargo, by NSSC, between Adak, Alaska and Anchorage, Alaska,
from the inception of Contract No. RFPN 62387-95-R-8150
through the present.

We assume that all records pertaining to this request are
available to you and that our request is properly directed to
your attention.  If there are any records located at another
office, please inform us and we will make a separate request.

We agree to pay reasonable copying charges or search fees, but we
request that you notify us before incurring charges or fees in
excess of $100.00.  If all or any part of this request is denied,
please notify us of the specific exemptions that you think
justify refusal to release the information.  We reserve the right
to appeal the withholding of any information.

Naval Sea Systems Command
September 18, 1997
Page 2


Please call me if you have any questions regarding this request.

Very truly yours,

GARVEY, SCHUBERT & BARER

By

      Wendie L. Wendt
      Paralegal


0330534.WP

*WWa*

LAW OFFICES

# GARVEY, SCHUBERT & BARER

A PARTNERSHIP OF PROFESSIONAL CORPORATIONS

<table>
<tr>
<td>

**WASHINGTON, D.C.**
FIFTH FLOOR
1000 POTOMAC STREET N.W.
WASHINGTON, D.C. 20007
(202) 965-7880

</td>
<td>

EIGHTEENTH FLOOR
SECOND & SENECA BUILDING
1191 SECOND AVENUE
SEATTLE, WASHINGTON 98101-2939
(206) 464-3939

FAX: (206) 464-0125

PLEASE REPLY TO SEATTLE OFFICE

</td>
<td>

**PORTLAND**
ELEVENTH FLOOR
121 S.W. MORRISON STREET
PORTLAND, OREGON 97204-3141
(503) 228-3939

</td>
</tr>
</table>

Voice Mail Ext. 1364

September 18, 1997

VIA CERTIFIED MAIL

Naval Supply Systems Command
1931 Jefferson Davis Highway
Arlington, VA 22241-5360

ATTN:   *Jim Yeager, FOIA Officer*

RE:   Freedom of Information Act Request

Dear Mr. Yeager:

Under the provisions of the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552, we are requesting that you send us copies of the
following records:

1.   Records of air or ocean shipments or transportation of
     cargo, by Military Traffic Management Command ("MTMC"),
     between Adak, Alaska and the Pacific Northwest, from the
     inception of Contract No. RFPN 62387-95-R-8150 through the
     present; and

2.   Records of air or ocean shipments or transportation of
     cargo, by MTMC, between Adak, Alaska and Anchorage, Alaska,
     from the inception of Contract No. RFPN 62387-95-R-8150
     through the present.

We assume that all records pertaining to this request are
available to you and that our request is properly directed to
your attention.  If there are any records located at another
office, please inform us and we will make a separate request.

We agree to pay reasonable copying charges or search fees, but we
request that you notify us before incurring charges or fees in
excess of $100.00.  If all or any part of this request is denied,
please notify us of the specific exemptions that you think
justify refusal to release the information.  We reserve the right
to appeal the withholding of any information.

Jim Yeager
September 18, 1997
Page 2


Please call me if you have any questions regarding this request.

Very truly yours,

GARVEY, SCHUBERT & BARER

By
     Wendie L. Wendt
     Paralegal


0325165.WP

**EXHIBIT 3**

FOIA Request for Adak, Ala. Movement

| MANIFEST SERVICE DATE | Originating Location | Destination Location | Type Cargo | SHIPMENTS | PIECES | WEIGHT | CUBE | REVENUE |
|---|---|---|---|---|---|---|---|---|
| 02-OCT-96 | OKD | ADK | UNACCOMP BAGGAGE | 1 | 1 | 1408 | 193 | 1482 |
| 02-OCT-96 | TCM | ADAK | AIRCRAFT SUPPLIES | 1 | 1 | 5 | 1 | 12 |
| 02-OCT-96 | ADK | ADK | CLOTHING, PARACHUTES | 8 | 8 | 159 | 17 | 210 |
| 02-OCT-96 | TCM | ADK | CONSTRUCTION EQUIPMENT | 1 | 1 | 126 | 7 | 152 |
| 02-OCT-96 | TCM | ADK | RATIONS SUBSISTENCE | 2 | 2 | 2010 | 165 | 1946 |
| 02-OCT-96 | ADK | ADK | UNACCOMP BAGGAGE | 4 | 4 | 645 | 104 | 440 |
| 02-OCT-96 | TCM | ADK | PLANTS PLANT PRODUCTS | 2 | 2 | 108 | 8 | 172 |
| 03-OCT-96 | ADK | AMA | SIGNAL CORPS SUPPLIES | 1 | 1 | 60 | 5 | 0 |
| 03-OCT-96 | EDF | ADK | VEHICLE AND PARTS | 1 | 1 | 42 | 5 | 0 |
| 03-OCT-96 | EDF | ADK | SIGNAL CORPS SUPPLIES | 1 | 1 | 90 | 12 | 0 |
| 03-OCT-96 | PHL | ADK | SIGNAL CORPS SUPPLIES | 3 | 7 | 3253 | 426 | 4010 |
| 03-OCT-96 | ADK | ADK | CONSTRUCTION EQUIPMENT | 2 | 5 | 1194 | 191 | 0 |
| 03-OCT-96 | TCM | ADK | HOUSE HOLD GOODS | 1 | 1 | 4205 | 145 | 1413 |
| 03-OCT-96 | ADK | ADK | RATIONS SUBSISTENCE | 1 | 1 | 370 | 8 | 74 |
| 03-OCT-96 | EDF | ADK | VEHICLE AND PARTS | 1 | 1 | 90 | 12 | 178 |
| 04-OCT-96 | SUU | ADK | SIGNAL CORPS SUPPLIES | 1 | 1 | 2 | 1 | 15 |
| 04-OCT-96 | ADK | ADK | AIRCRAFT SUPPLIES | 1 | 1 | 2 | 1 | 11 |
| 05-OCT-96 | OKO | ADK | VEHICLE AND PARTS | 1 | 1 | 478 | 23 | 668 |
| 05-OCT-96 | TCM | ADK | RATIONS SUBSISTENCE | 6 | 7 | 1658 | 230 | 44 |
| 07-OCT-96 | EDF | ADK | SIGNAL CORPS SUPPLIES | 1 | 1 | 17 | 8 | 539 |
| 07-OCT-96 | OKD | ADK | UNACCOMP BAGGAGE | 1 | 2 | 138 | 49 | 1543 |
| 07-OCT-96 | ADK | TCM | HOUSE HOLD GOODS | 2 | 4 | 752 | 137 | 5 |
| 07-OCT-96 | ADK | ADK | HOUSE HOLD GOODS | 1 | 1 | 5 | 1 | 5 |
| 07-OCT-96 | ADK | ADK | MEDICAL SUPPLIES | 1 | 1 | 10 | 1 | 15 |
| 07-OCT-96 | EDF | SUU | AIRCRAFT SUPPLIES | 2 | 2 | 199 | 49 | 539 |
| 07-OCT-96 | OKO | OKO | HOUSE HOLD GOODS | 1 | 1 | 200 | 3 | 680 |
| 08-OCT-96 | H1K | ADK | HOUSE HOLD GOODS | 1 | 1 | 10 | 1 | 12 |
| 08-OCT-96 | ADK | ADK | UNACCOMP BAGGAGE | 1 | 1 | 129 | 19 | 80 |
| 08-OCT-96 | TCM | ADK | AIRCRAFT SUPPLIES | 8 | 13 | 3677 | 532 | 2737 |
| 09-OCT-96 | ADK | EDF | CONSTRUCTION EQUIPMENT | 1 | 1 | 17 | 2 | 0 |
| 09-OCT-96 | ADK | EDF | FUELS AND LUBRICANTS | 2 | 4 | 1213 | 176 | 864 |
| 09-OCT-96 | ADK | EDF | OFFICE-SCHOOL SUPPLIES | 8 | 12 | 611 | 565 | 2499 |
| 09-OCT-96 | ADK | EDF | SIGNAL CORPS SUPPLIES | 3 | 4 | 1017 | 134 | 413 |
| 09-OCT-96 | NIP | EDF | VEHICLE AND PARTS | 1 | 1 | 17 | 2 | 0 |
| 09-OCT-96 | NIP | NIP | SIGNAL CORPS SUPPLIES | 2 | 3 | 1148 | 120 | 2104 |
| 09-OCT-96 | NUH | NUH | VEHICLE AND PARTS | 1 | 1 | 150 | 12 | 161 |
| 09-OCT-96 | ADK | ADK | PLANTS, PLANT PRODUCTS | 1 | 1 | 19 | 1 | 0 |
| 09-OCT-96 | ADK | NZY | SIGNAL CORPS SUPPLIES | 1 | 1 | 5 | 2 | 25 |
| 09-OCT-96 | NZY | ADK | CHEMICAL CORP | 1 | 1 | 247 | 16 | 0 |
| 09-OCT-96 | ADK | ADK | VEHICLE AND PARTS | 6 | 10 | 2353 | 362 | 0 |
| 09-OCT-96 | ADK | TCM | HOUSE HOLD GOODS | 1 | 1 | 579 | 73 | 0 |
| 09-OCT-96 | ADK | TCM | OFFICE-SCHOOL SUPPLIES | 1 | 1 | 32 | 5 | 60 |
| 09-OCT-96 | ADK | TCM | VEHICLE AND PARTS | | | | | |

E

EXHIBIT
3
Peterson  4/28/05
PENGAD 800-631-6989