IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

SAMSON TUG AND BARGE CO., INC.,　　　)
an Alaska Corporation　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff/Appellant　　　　　　　　)　　　Case Number:　A03-006 CV
　　　　　　　　　　　　　　　　　　　　)　　　　　　　　　　　Admiralty JWS
　　　vs.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant/Appellee.　　　　　　　　)

## PLAINTIFF'S MOTION IN LIMINE

Plaintiff, by undersigned counsel, hereby moves for an order in limine, precluding

Defendant from offering evidence in two areas based on its conduct in discovery and its failure

to preserve certain records. The order in limine sought herein has two aspects, as follows:

　　　　1.　　Precluding Defendant from calling witnesses to offer testimony in an area as to

which discovery, including properly noticed 30(b)(6) depositions, was sought unsuccessfully by

Plaintiff; and

　　　　2.　　Precluding Defendant from relying on theories and positions which would have

been either supported or refuted by documentary records known to have existed at one time in

the sole possession of the government, and sought unsuccessfully by Plaintiff.

### Background

This case arises from a government contract between Plaintiff, Samson Tug and Barge

Co., Inc. ("Samson") and the United States ("Government") whereby Samson contracted to

provide barge transportation of cargo to and from the Government's defense installation at Adak,

Alaska for the period October 1, 1995 through September 30, 1997 ("the Contract"). The

Contract was a requirements contract whereby the Government agreed to ship all cargo suitable

for barge transportation with Samson (subject to certain limited exceptions not at issue here). In

breach of the Contract, a substantial amount of cargo, the exact amount of which remains

unknown (and for reasons set forth below, unknowable), which was suitable for barge

transportation was shipped by air, depriving Samson of revenue to which the Contract entitled it.

### The Factual and Legal Bases for Samson's Motion In Limine

1. The Government's Failure to Produce Documents Pertaining to, or A Witness Responsible For, The Decisions to Ship Barge-Suitable Cargo by Air.

Since the earliest stages of discovery in this case, Samson has sought to depose, through

30(b)(6) depositions, Government officials responsible for making decisions regarding the mode

of transportation of cargo, i.e., barge versus air, to and from Adak during the Contract period.[1]

Samson has also sought the production of documents relating to such decisions. The

Government has failed to produce for deposition any witnesses purporting to have first-hand

knowledge of the facts and circumstances surrounding these decisions. Additionally, the

Government has failed to produce documents reflecting the facts and circumstances surrounding

those decisions.

Discovery has now closed by virtue of this Court's Order. It would be fundamentally

unfair, and a violation of the Government's discovery obligations, for the Government to be

allowed to produce for the first time at trial either witnesses to testify as to or documents relating

to the facts and circumstances surrounding these mode of transportation decisions.

Federal Rule of Civil Procedure 37(c)(1) provides that:

> A party that without substantial justification fails to disclose information
> required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery
> as required by 26(e)(2), is not, unless such failure is harmless, permitted to
> use as evidence at a trial, at a hearing, or on a motion any witness or
> information not so disclosed. In addition or in lieu of this sanction, the court,

---

[1] The pertinent pages from the 30(b)(6) notice are attached as Exhibit 1.

> on motion and after affording an opportunity to be heard, may impose other
> appropriate sanctions.

F.R.C.P. 37(c)(1) 2008.

Where, as here, a party fails to disclose requested information, the appropriate remedy is

to preclude that party from presenting such information at trial. *Pharmacia Corp. Motor Carrier*

*Services Corp.*, slip copy 2007 WL 1816044 (D.N.J. 2007).  Sanctions under Rule 37(c)(1) do

not require a showing of bad faith or a violation of a court order. *Yeti by Molly, Ltd. V. Deckers*

*Outdoor Corp.*, 259 F.3d 1101, 1108 (9th Cir. 2001).  The sanction of precluding the undisclosed

evidence is self-executing or automatic. *See Id.*

The Government never produced a witness to testify on deposition regarding decisions

over which mode to ship cargo, a critical issue in the case, despite numerous and unequivocal

requests. The Government's failure to provide a FRCP 30(b)(6) witness is a reason to preclude

the evidence which is the subject of this Motion. *See Veritas Operating Corp. v. Microsoft*

*Corp.*, slip copy 2008 WL 657936 (W.D. Wash. 2008); *Colbert v. City of Nevada City*, slip copy

2007 WL 3010424 (E.D. Cal. 2007); *Estate of Wallace v. City of Los Angeles*, 229 F.R.D. 163

(C.D. Cal. 2005); *United States v. Phillip Morris*, slip copy 2005 WL 729434 (D.D.C. 2005)

(finding that failure to produce knowledgeable 30(b)(6) witness or responsive 30(b)(6) testimony

precluded use of evidence that was requested through 30(b)(6) deposition).

2.    The Government's Failure to Produce Full and Complete Records of Flights to and from Adak during the Contract Period.

As early as June, 1997, during the Contract period, when Samson came to believe that the Government was diverting barge-suitable cargo to air transportation, up to and including last year, Samson has sought records that would show the following:[2]

1.    All the air flights to and from Adak during the Contract period;

2.    A description of the cargo shipped by the Government on these air flights;

3.    The volume of cargo shipped by the Government on these air flights.

While some records showing incomplete information regarding the foregoing have been intermittently produced, the production has fallen far short of being comprehensive on this cardinal issue.  While the incomplete records are sufficient to demonstrate that material diversion of cargo from the mode contractually required did occur, the records do not remotely suffice to permit a complete analysis of the amount of diverted cargo.

It is clear that such records existed at one time.  All cargo carrying flights to and from Adak were accompanied by cargo manifests describing the cargo and setting forth its volume.[3] These manifests have not been produced and apparently cannot be, or at least have not been located, nor have other records that comprehensively contain the same information, although partial compilations of data from some of the underlying records have been produced.

A party's duty to preserve records begins before it has actual notice of litigation, but when it has notice that the evidence is relevant to present or future litigation. *Fujitsu Ltd. v.*

---

[2]  See Exhibit 2 consisting of FOIA requests to various Government agencies concerning such records.  In addition, Samson filed numerous other FOIA requests seeking those records in 2000 and 2001 and has persistently sought such records through discovery in this case.  In response to the second FOIA request the Government created and produced a computer generated chart entitled "FOIA Request Adak, Alaska Movement," suggesting that source documentation for the creation of the chart must have existed at that time.  It was not produced, however.  Exhibit 3.

[3]  Several Government witnesses have so testified in depositions.

*Federal Express Corp.*, 247 F.3d 423, 436 (2nd Cir. 2001). In the context of a government

contracts claim under the Contract Disputes Act, notice of future litigation may occur, as it did in

this case, well before receipt of a claim by the contracting officer, "'but also . . . [during] that

period before the litigation when a party reasonably should know that the evidence may be

relevant to anticipated litigation.'" *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 60

(2003), *quoting Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *see also*

*AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 440 (2007) (finding duty to preserve

evidence that may be relevant to anticipated litigation). As applied to the facts at hand, given

Samson's surfacing of the issue of possible breach through diversion during performance of the

contract, and its related FOIA requests, the Government was put on notice regarding the

possibility, indeed the likelihood, of future litigation and the need to preserve the records that are

the subject matter of this Motion.

      Courts in this Circuit have "broad discretionary power to permit a jury to draw an adverse

inference from the destruction or spoliation against the party or witness responsible for that

behavior." *Glover v. Bic Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993), *citing Akiona v. United*

*States*, 938 F.2d 158 (9th Cir. 1991). Moreover, the law in this Circuit does not require a finding

of bad faith as a prerequisite to such an inference, but rather "simple notice of 'potential

relevance to the litigation.'" *Id.* The rationale behind sanctions for spoliation is twofold. It

prevents a party that destroyed evidence from benefiting from it and it deters such conduct in the

future. *Akiona*, at 160.

      This discretion to order sanctions is by no means limited to jury trials. A recent case

from the United States Court of Federal Claims, also involving a bench trial for a Contract

Disputes Act claim, provides a good example of a spoliation remedy in the context of a

government contracts diversion case. *United Medical Supply Co. v. United States*, 77 Fed. Cl.
257 (2007). United Medical Supply (hereinafter "UMS") entered into a requirements contract
with an agency of the Department of Defense to provide medical supplies for a number of
Medical Treatment Facilities in the Texas and Oklahoma. *Id.* at 259. When UMS discovered
that the Government was breaching its contract by diverting required purchases from it to other
vendors, it initiated legal action to include filing a FOIA request to determine the extent of the
diversion. *Id.* Despite the FOIA request and a complaint based on a bankruptcy claim that
eventually made its way to the Court of Federal Claims, the Government did not take appropriate
measures to notify all of the applicable facilities to preserve records of orders of medical
supplies. *Id.* at 260-64. As a result, a number of facilities inadvertently destroyed relevant
records before any sort of discovery request or order had been issued. *Id.* This rendered UMS
unable to determine how much of the orders for medical supplies were diverted in breach of its
contract. Finding a lack of appropriate diligence in ensuring preservation of the records, the
Court sanctioned the Government by prohibiting the Government from cross-examining UMS's
expert "to the extent he or she . . . attempts to extrapolate the total number of diversions." *Id.* at
276. Likewise, the Court prohibited the Government's expert from testifying based on the
destroyed evidence as well as ordering payment of costs related to the spoliation to UMS. *Id.*

Similarly, with Samson, the Government knew that records relating to diverted cargo
were an issue even before the Contract concluded. Despite the obvious signals, it appears that
not only were the Government's efforts to preserve records insufficient, there is no indication
that the Government undertook any efforts to preserve records whatsoever.[4] The records to

---

[4] Despite being served with Interrogatories requesting a detailed explanation as to the Government's actions in
preserving and locating missing records, no satisfactory explanation has been provided.

prove Samson's claim in its entirety existed at one time and they existed at a time when it should

have been obvious that such records might be relevant to anticipated litigation.

  In response to the FOIA requests, the DOD produced a compilation of data about air

cargo flights and volumes of cargo carried on some, but not all of those flights, but the

underlying records or data from which that compilation was drawn were never produced.

Similarly, in the course or discovery, the Government produced some additional incomplete

compilations, again without producing the complete underlying records or database from which

they were drawn. Thus, the Government has made it impossible for Samson to determine

whether the compilations are accurate or complete, and has precluded Samson from accessing

the more comprehensive data in the underlying records, such as cargo manifests, that would

show how much and what types of cargo were transported by air. Just as in *United Medical*

*Services*, when a party cannot locate records known to have existed at one time when it was on

notice of anticipated litigation, and when those records are as important to the case as the

missing records are to this one, a sanction similar to the one imposed in the UMS case is

appropriate.

  In other government contracts decisions involving the scope of the Government's breach

by diversion, the adequacy of records has been a recurring problem. While not addressing the

issue in terms of sanctions for spoliation, decisions have had the effect of prohibiting the

Government from taking advantage of the lack of records in assessment of damages. The

overriding principle in diversion cases lacking sufficient records is that "'[i]f a reasonable

probability of damage can be clearly established, uncertainty as to the amount will not preclude

recovery,' and the board's duty is to 'make a fair and reasonable approximation of the

damages.'" *Ace Federal Reporters v. Barram*, 226 F.3d 1329, 1333 (Fed. Cir. 2000) *quoting*

- 7 -

*Locke v. United States*, 283 F.2d 521, 524 (1960). *See also T&M Distributors*, ASBCA No. 51279, 2001-2 B.C.A. ¶ 31,442, June 5, 2001; *Pacific Technical Enterprises, Ltd.*, ASBCA No. 17087, 74-2 BCA ¶ 10679, June 5, 1974.

Based on the foregoing, Plaintiff requests that the Court rule <u>in limine</u> that the Government be precluded from 1) calling any witness to testify based on first hand knowledge as to the facts and circumstances surrounding the decision as to mode of transportation, and 2) presenting any theory of defense as to liability or damages that would be either supported by, or possibly refuted by, the missing documents concerning cargo shipped by air.

### CONCLUSION

For the foregoing reasons, Plaintiff hereby moves for an order <u>in limine</u>.

Respectfully submitted,

/s/ Richard D. Gluck

Dated:  March 31, 2008

Richard D. Gluck
Harold G. Bailey, Jr.
Garvey Schubert Barer
1000 Potomac Street, NW, 5th Floor
Washington, DC  20007
Counsel for Samson Tug and Barge Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2008, a copy of Plaintiff's Motion In Limine was

served by first class mail, postage prepaid to the following:

> Jeanne M. Franken, Esq.
> Trial Attorney
> Torts Branch, Civil Division
> U.S. Department of Justice
> 7-5393 Federal Building
> P.O. Box 36028
> San Francisco, CA  94102-3463
>
> United States Attorney
> Federal Building and U.S. Courthouse
> 222 West Seventh Avenue, #9, Room 253
> Anchorage, Alaska  99513-7567
>
>
> /s/ Richard D. Gluck
> Richard D. Gluck