# Transcript of

# Michael Gragen

**Date:** June 20, 2007

**Case:** Samson Tug & Barge v. United States of America

---

Phone: 410-268-6006
Fax: 410-268-7006
Email: corbinandhook@corbinandhook.com
Internet: www.corbinandhook.com



## CORBIN & HOOK
Reporting & Videoconferencing

*- Specializing in Interactive Realtime & Rough ASCII Transcripts -*

Exhibit "E"

129

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 4

```
1           IT IS HEREBY STIPULATED AND AGREED that
2    the reading and signing of this deposition are not
3    waived.
4              MICHAEL GRAGEN,
5    duly been sworn to tell the truth, the whole truth,
6    and nothing but the truth, testifies as follows:
7              E X A M I N A T I O N
8    BY MR. BORAKS:
9         Q    Would you state your full name, please.
10        A    Yes, it's Michael M. Gragen.  G-R-A-G-E-N.
11        Q    And where are you pleasantly, or
12   presently, employed?
13             MS. FRANKEN:  Or both.
14        A    Presently employed, not.  I actually work
15   part-time at the Home Depot up in Topsham, Maine and
16   I work at a golf course in Litchfield, Maine.
17        Q    So you're no longer with the Government?
18        A    Correct.
19        Q    And when did you leave Government service?
20        A    2002.  March 1st.
21        Q    At the time you left Government service,
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

*Page 5*

```
1    what were your -- what was your title, what were
2    your duties?
3         A    I was still a Lieutenant Commander in the
4    United States Navy.  I was the administrative
5    officer at the Supervisor of Ship Building in Bath,
6    Maine.
7         Q    Are you still in the service?
8         A    No, sir.
9         Q    So did you retire from active service as a
10   Lieutenant Commander?
11        A    Yes.
12        Q    And that was in 2002?
13        A    Correct.
14        Q    When did you join the armed forces?
15        A    I joined in, excuse me, 1982.
16   February 12th.
17        Q    And what branch of the service did you
18   join?
19        A    It was the United States Navy.
20        Q    And did you join as an officer?
21        A    Yes.
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 9

```
 1   '88 to '90.  Then I did the Monetary post-graduate

 2   education from beginning of '91 through the middle

 3   of '92.

 4        Q    You have to excuse me for a minute.  I

 5   need to change chairs with you.

 6             (Off the record colloquy.)

 7        Q    Okay.  And then when you finished that,

 8   what was your next assignment?

 9        A    From the middle of '92 after I graduated

10   to the middle of 1995 I was assigned to the

11   Brunswick Naval Air Station as the Naval exchange

12   officer.

13        Q    Okay.  Well, let's build on that.

14        A    Okay.

15        Q    Middle of '95?

16        A    From the middle of '95 to middle of '96 I

17   was at the Naval Air Station Adak, Naval Air

18   Facility Adak to be exact.  After I left Adak I went

19   to the Supervisor of Ship Building in Bath, Maine,

20   and I was there from the middle of '96 through the

21   end of my military career in 2002.
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 10

```
1      Q     So you say middle of '95 to the middle of
2    '96?
3      A     Yup.
4      Q     Is there any chance you can give us the
5    months?
6      A     Yes.  It was July '95 to July '96.
7      Q     And what was your job during that
8    timeframe, or if there was more than one?
9      A     At Adak?
10     Q     Yes.
11     A     I was the supply officer for the base.
12     Q     And during the period that you were the
13   supply officer for the base, were you the only
14   supply officer for the base?
15     A     I was the only supply officer for the
16   base, yes.  There were other supply officers on the
17   island who worked for me.
18     Q     So is it fair to say that you were the
19   head supply officer?
20     A     That's correct.
21     Q     And how many persons worked for you during
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 15

```
 1   officer staff on the island; is that correct?
 2        A    Yes.
 3        Q    Now, I think it was probably contained
 4   within what you've just told us, but the function of
 5   arranging for transportation of things to and off
 6   the island, was that part of the supply officer
 7   function?
 8        A    Yes.
 9        Q    At the time that you became the supply
10   officer -- the chief supply officer, I'm just going
11   to say supply officer from now on, the supply
12   officer in July of '95, whom did you replace?
13        A    I believe his name was Peter, but I've
14   lost his last name.
15        Q    And when you assumed your duties in terms
16   of the transportation of things on and off the
17   island, what assets were in use in July of '95 to
18   transport things on and off the island?
19        A    There was really only two ways to get
20   something to the island.  It either came in --
21        Q    Or from the island?
```

```
 1      A    Or from the island.  Either came in by air
 2  or it came in by barge.
 3      Q    And went off one of those two ways as
 4  well?
 5      A    Correct.
 6      Q    And what outfit provided the barge service
 7  to and from the island in July of '95?
 8      A    It was Samson.
 9      Q    Any others?
10      A    No.
11      Q    During the time of your tenure as supply
12  officer, were there -- were any other barge services
13  used other than through Samson?
14      A    No.
15      Q    Do you remember -- strike that.  Do you
16  remember that there came a time in around September
17  or October of '95 when Samson began to operate its
18  barge service under a new contract?
19      A    No.
20      Q    Do you remember being aware at any time
21  during your tenure of the change from one contract
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 19

```
 1        A     Primary purpose of the passenger loading.
 2   Also, I believe most -- perhaps some of the mail
 3   came out -- first class mail came out on the
 4   airplane.  And occasionally some publications we
 5   might get.  And very rarely some emergency repair
 6   parts came out.
 7        Q     Now, you've told us about things that came
 8   out by air.  What about things that went off the
 9   island by air?
10        A     The only thing I can recall that might
11   have gone off is personal property stuff.  When
12   people were leaving the island, if they took some
13   papers, some of the stuff that accumulated over
14   time, that might have gone on a plane, depending on
15   how much it was.  But that would be about it.
16        Q     And in that instance -- in that instance
17   would those items that you described go on the same
18   plane as the people?
19        A     That's correct.
20        Q     So who were the -- what were the sources
21   of air transportation.  Were there companies that
```



```
1      Q    Who within your organization made
2  decisions as to how cargo was to be transported
3  either to or from Adak. By what mode. When I say
4  how, I mean by what mode?
5      A    That's a complicated question.
6      Q    Is there any way I could simplify it.
7           MS. FRANKEN:  He was about to say
8  something. If you would allow him to continue.
9      A    Let me put it this way. When you're a
10 supply officer or supply personnel on an island, you
11 don't have the power to make any decisions about how
12 stuff is getting there. You basically request how
13 stuff could possibly get there. I'll give you one
14 for example. If there was a breakdown in a key
15 critical system on the island, let's say the power
16 plant is going down or the water purification plant
17 was going down, or the radar on the island, radar
18 for the airport was going down, those were critical
19 systems, I could request that a part, a repair part,
20 would be flown out to repair that. Because it
21 needed to get there the quickest possible way. But
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 24

```
1      A     That's correct.
2      Q     And was it you who had the authority to
3   decide whether to propound that request to FISC?
4      A     Yes.
5      Q     Now, if there was no emergency, in the
6   ordinary course of transporting things to the
7   island, did you have any role in deciding by what
8   mode such things would be transported?
9      A     No.
10     Q     Who decided that?
11     A     Again, that would come under the --
12  control is the wrong word, but the scope of the FISC
13  in Seattle.  I must say that what you're talking
14  about here is the Navy supply system, the DLA,
15  Defense Logistics Agency supply system, that decided
16  based on system rules how stuff got to you.
17     Q     How stuff got to the island?
18     A     How stuff got to the island, yes.
19     Q     Now, let's turn around and move the other
20  way.  What about stuff, I'll use your term of art,
21  stuff.  What about stuff transported off the island.
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 27

```
 1       A    Correct.
 2       Q    Okay.  Subject to that qualification,
 3  apart from that, your command played no role in
 4  deciding the mode of transportation by which stuff
 5  came to Adak; is that correct?
 6       A    That's correct.
 7       Q    And is it also correct that your command
 8  played no role in deciding how stuff was
 9  transported, by what mode stuff was transported off
10  of Adak, correct?
11       A    Correct.
12       Q    Was there a qualification as to that
13  similar to the one that you told me about regarding
14  Elmandorf?
15       A    Again, the only qualification that comes
16  to mind is that personal property thing I mentioned
17  before where people might take their personal papers
18  and things like that going off the island.  That
19  usually accompanied them on the airplane.
20       Q    Is that something your command would
21  approve?
```

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 28

```
 1      A    It was a personal property thing, so, yes,
 2  there was a personal property office there that I
 3  signed the paperwork for.  But the personal property
 4  office was a civilian office that was -- it also
 5  worked for the supply department.
 6      Q    And this qualification that you've just
 7  offered us related only to personal items that would
 8  accompany service persons who were leaving the
 9  island; is that right?
10      A    Service personnel and civilian employees
11  that worked on the island.
12      Q    But I'm right about the part, it only
13  related to stuff that constituted personal items
14  that was leaving with those personnel?
15      A    Yes.
16      Q    So is it fair to say that we're not
17  talking about large quantities of stuff?
18      A    Yes.
19      Q    Do you remember who replaced you as supply
20  officer?
21      A    The gentleman's name was Rodney Duggins.
```

NAME OF DEPONENT: Mike Gragen

DATE OF DEPOSITION: June 20, 2007

CASE NAME: Samson vs. United States of America

INSTRUCTIONS: Please make changes by listing the page and line number in the places indicated on this sheet and listing the changes to the right.

| Page # | Line # | Corrections |
|--------|--------|-------------|
| 9 | 1 | Monterey vice Monetary |
| 25 | 18 | Elmendorf vice Elmandorf (and all following references to Elmandorf) |
| 61 | 5 | Supply officer-ing vice Supply officer-ring |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Signed subject to penalty of perjury

Date: 16 July 2007      _Michael M. Gragen_
                             Signature

/4/

Page 85

1  couple of times in my now lengthy career, not
2  as longs as yours, originals have been lost.
3  And I once had someone say, we can't use that
4  deposition. I would like to stipulate to the
5  use of a copy if for some reason the original
6  is not available. Otherwise I will not relieve
7  the court reporter of his obligations and he
8  will retain the original until notice of the
9  parties that it should be filed with the
10 District Court in Anchorage, Alaska.
11       MR. BORAKS: My god, I don't want to do
12 that to you.
13       MS. FRANKEN: Thanks. So will you so
14 stipulate now that we have had a 30 minute talk
15 about this.
16       MR. BORAKS: 30 minute. 30 seconds.
17       MS. FRANKEN: Whatever.
18       MR. BORAKS: Sure.
19       MS. FRANKEN: I knew he would say sure.
20       (Deposition concluded at 2:57 p.m.)
21

Page 86

1       Certificate of Deponent
2    I hereby certify that I have read and examined
3  the aforegoing transcript, and the same is a true
4  and accurate record of the testimony given by me.
5    Any additions or corrections that I feel are
6  necessary, I will attach on a separate sheet of
7  paper to the original transcript.
8
9  *[signature]*  7/16/2007
10 MICHAEL GRAGEN              DATE

Page 87

1       COMMONWEALTH OF VIRGINIA
2    I, David Corbin, a Notary Public in and
   for the Commonwealth of Virginia, do hereby
3  certify that the within named, MICHAEL GRAGEN,
   personally appeared before me at the time and
4  place herein set according to law, was
   interrogated by counsel.
5
    I further certify that the examination was
6  recorded stenographically by me and then
   transcribed from my stenographic notes to the
7  within printed matter by means of
   computer-assisted transcription in a true and
8  accurate manner.
9    I further certify that the stipulations
   contained herein were entered into by counsel
10 in my presence.
11   I further certify that I am not of counsel
   to any of the parties, not an employee of
12 counsel, nor related to any of the parties, nor
   in any way interested in the outcome of this
13 action.
14   AS WITNESS my hand and Notarial Seal this
   21st day of June, 2007, at Alexandria, Virginia
15
16
17       _____
         David C. Corbin
18       Notary Public
19
20 My commission expires May 16, 2009
21

*Deposition of Michael Gragen*
*Taken on June 20, 2007*

Page 87

```
 1              COMMONWEALTH OF VIRGINIA
 2       I, David Corbin, a Notary Public in and
         for the Commonwealth of Virginia, do hereby
 3       certify that the within named, MICHAEL GRAGEN,
         personally appeared before me at the time and
 4       place herein set according to law, was
         interrogated by counsel.
 5
         I further certify that the examination was
 6       recorded stenographically by me and then
         transcribed from my stenographic notes to the
 7       within printed matter by means of
         computer-assisted transcription in a true and
 8       accurate manner.
 9       I further certify that the stipulations
         contained herein were entered into by counsel
10       in my presence.
11       I further certify that I am not of counsel
         to any of the parties, not an employee of
12       counsel, nor related to any of the parties, nor
         in any way interested in the outcome of this
13       action.
14       AS WITNESS my hand and Notarial Seal this
         21st day of June, 2007, at Alexandria, Virginia
15
16
17                              _____
                                David C. Corbin
18                              Notary Public
19
20  My commission expires May 16, 2009
21
```

Corbin & Hook Reporting and Videoconferencing
410-268-6006   1-866-337-6778

/43