IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAMSON TUG AND BARGE CO., INC., )<br>an Alaska Corporation )<br>)<br>   Plaintiff/Appellant )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>   Defendant/Appellee. ) | Case Number: A03-006 CV<br>Admiralty JWS |

### PLAINTIFF'S REPLY TO DEFENDANT'S
### OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE

The essential dispute in this case is whether the Government, having entered into a requirements contract with Plaintiff Samson Tug and Barge Co., Inc. for the transportation of cargo by barge to and from Adak, Alaska, breached the contract by diverting cargo to air transportation that it was contractually obligated to ship by barge with Plaintiff.

On the issue of liability, the Government's defense seems to be twofold:

1.    Notwithstanding the contract, "the Government contends that at all times it legally had the discretion to define its 'requirement' for ocean transportation between Adak and CONUS, and thus to determine how cargo would be transported in the DTS, whether by surface means or air, in order to meet the operational needs of the customer agency on Adak, primarily the Navy. This means that even had there been a large amount of cargo carried by planes, that would have been within the purview of the Government not Samson." Government's Opposition, p.11, n.5.

2.      There is no documentary or other evidence that significant amounts of cargo suited for ocean transportation was shipped by air.

The instant motion is not addressed to the merits of these issues, although the Government's opposition tries mightily to present its version of the merits in a way that is both inappropriate and misleading. Instead, the thrust of this motion relates to the discovery process, as is discussed below.

> A.   The Government's Failure to Produce A 30(b)(6) Witness With Specific Knowledge of Transportation Mode Decisions.

Given the framing of the essential issues above, it is not surprising that Samson included within the topics for examination at a 30(b)(6) deposition the transportation mode decisions regarding barge versus air. While the Government purported to produce at least five witnesses in response to the 30(b)(6) notice, none of them had any responsibility for or any knowledge of the criteria applied in the particular decisions to ship by air. After taking several such depositions, at great expense and with mounting frustration, Plaintiff chose not to continue this costly unproductive process, accepting an inability to depose any such witnesses as long as the Government didn't attempt to surface them for the first time at trial.[1]

Now the Government claims that it has "never refused to produce witnesses on noticed subjects, and remains willing to do so." Opposition, p.7. Plaintiff is not contending the Government has refused to produce witnesses with personal knowledge of the reasons for and circumstances surrounding the transportation mode decisions. Perhaps the Government has not actively refused to produce, but it certainly has passively failed to produce. Even now it appears

---

[1] On July 11, 2006 counsel for Plaintiff wrote Government counsel regarding the 30(b)(6) witness production issues, expressing a fear that the Government was engaging in "bandying" as that term is used in the Advisory Committee Notes to the 1970 Amendments to F.R.Civ.P. 30, meaning the production of a series of witnesses all of whom disclaimed knowledge as to a critical area of inquiry, in this instance the criteria applied to decide what mode of transportation would be employed. Exhibit 1.

that the Government's professed willingness to produce is limited to "one or more witnesses with regard to the general rules, policies and procedure attendant to decision making regarding what modality was to be used when moving cargo to and from Adak . . ." Opposition, p.8. These generalities are not what Plaintiff's motion is directed to, however. The motion is directed to witnesses who would be called to say, in essence "I made the transportation mode decisions and here are the considerations that I employed in doing so." It is witnesses such as these who, since they were not previously produced, Plaintiff is seeking to exclude.

    B. <u>The Failure To Produce Full and Complete Records of Cargo Carried by Air</u>

The Government argues that there is no support for Samson's contention that documentation showing the nature and amount of cargo shipped by air is "missing" because "no testimony has been obtained that contemporaneous records, such as flight manifests, actually existed for all flights . . . or that any such documents, assuming some did once exist, would likely have been retained after the flights were concluded, or that they would have been in the possession of the Government for commercial or private planes, or that any such documents in the possession of the United States were destroyed after notice was obtained that Samson might be initiating litigation regarding its contract." Opposition, p.9.

It is surely counterintuitive to suggest that flights occurred with no contemporaneous documentation concerning the cargo they carried. Moreover, it is at least misleading to state that there was no testimony that such records actually existed. At the <u>de bene esse</u> deposition of Robert J. Clark, taken by the Government, Mr. Clark, who was the government official in charge of the base closure at Adak during the pertinent period, testified that a cargo manifest is created for each pallet of cargo loaded into an aircraft and that the base supply officer would have maintained a copy of the manifests. Exhibit 2, Clark Dep. excerpts pp.139, 167. To the same

effect was the testimony of Brian Peterson, a witness produced by the Government pursuant to a 30(b)(6) notice. Peterson was a contract administrator involved in air traffic contracts with outside vendors at Adak. He produced two partial charts of flights to and from Adak which he said were compilations derived from a database derived from cargo manifests. He concurred that cargo manifests are the documents generated when cargo is transported by air. Exhibit 3, Peterson Dep. excerpts, Nov. 28, 2005, pp.25, 26; Nov. 29, 2005, pp.18, 19.

Notwithstanding the foregoing, the Government has failed to produce a single air cargo manifest. It has produced a document called Command Histories which reflects that hundreds of flights to and from Adak occurred between 1995-97. Exhibit 4. It produced two charts reflecting partial compilations of flights, with minimal cargo information, without producing related air cargo manifests or other underlying source data from which the charts were derived. Exhibits 5 and 6. The Government's theory as to this absence of documentation is completely self-serving:

> Really Samson is just saying they have found no evidence of a diversion to air of what they define as barge-appropriate cargo, and conclude the Government destroyed such evidence. Of course, the far more probable explanation is that there was simply no diversion, and there in no evidence of one, as the Government witnesses have testified.

Opposition, p.10.

It is precisely this kind of argument that Plaintiff's motion in limine contemplates, i.e. an argument that the absence of documentation that once existed in the Government's possession is evidence supporting the Government's position on the merits. Moreover, the suggestion in the quoted portion --- that Government witnesses testified there was no diversion --- is remarkable. There is no cite to any testimony supporting this averment, and for a very good reason --- no witness testified there was no diversion of cargo from barge to air.

Samson attached to its motion as Exhibit 2 four letters written to government agencies in 1997 under FOIA seeking records regarding air transportation. These letters were prompted by Samson's burgeoning belief that the Government was shipping cargo suited for ocean transportation by air. Contrary to the Government's suggestion, the letters were sent to the Government agencies most likely to have such records, but, in any event, the Government's statement that "The early FOIA letters in 1997 ask only for cargo documents in the possession of the particular agency to which the request is addressed" is simply incorrect. Each letter stated, "We assume that all records pertaining to this request are available to you and that our request is properly directed to your attention. If there are any records located at another office, please inform us and we will make a separate request." No direction to seek records from another office was given, no records responsive to these requests were produced nor does it appear that responsive records were preserved based thereon.

The Government argues that, insofar as these letters show that it was on early notice of the need to preserve records, they should be ignored. The Government points out that the paralegal author of these letters has not signed a sworn declaration as to authenticity. The Government does not contend that the letters are in fact not authentic. Undersigned counsel represents as an officer of the Court that the letters attached to Plaintiff's motion are authentic copies of letters drafted under his supervision and sent on or about the dates shown. In any event, Rule 7.1 of the local rules does not require the level of authentication suggested by the Government. Instead, the Rule permits either "properly authenticated documents or other exhibits as provided in paragraph (a)(4) . . ." which paragraph simply refers to a series of kinds of permissible support which includes "other similar documentary exhibits."

The Government offers a number of hypotheses as to why comprehensive documentary evidence does not seem to exist as to the number of air cargo flights, the nature of the cargo carried and the weight, but these hypotheses amount to no more than speculation. No explanation has been offered as to why, in fact, the documents have not been produced except the representation by Government counsel that none have been found --- by her. (Plaintiff is not suggesting that Government counsel has withheld or destroyed documents).

The Government argues that even if spoliation were found that the remedy sought by Plaintiff is too harsh because it would amount to striking a Government defense. Plaintiff is not seeking that remedy, however. Plaintiff is seeking to preclude the Government from using the absence of records affirmatively as they have, for example, in their opposition by arguing that the absence of records tends to prove the absence of diversion.

        C.      <u>The Government's Inappropriate and Misleading Foray Into The Merits</u>.

The Government has liberally laced its opposition with assertions directed to the ultimate factual merits of this case. Again and again the Government suggests that no cargo was diverted from barge to air, culminating in the Conclusion, where it says "No one has testified, and no documents have been found to support the notion that significant cargo, which looked like barge appropriate cargo, left the island in some way other than by Samson barge." Opposition, p.11.

These assertions are simply not pertinent to the issues raised in Plaintiff's motion in limine. Beyond that, however, despite its resistance to being drawn into this premature and irrelevant (for present purposes) debate, Plaintiff cannot resist a limited observation in passing, because it is one thing for the Government to make arguments that are not on point, but is worse to misstate the facts. Exhibit 6 is a chart produced by the Government showing a very limited partial compilation of flights. It is the only one produced to Plaintiff with any information about

- 6 -

the nature and weight of air cargo carried. It depicts a number of air shipments totaling hundreds of thousands of pounds of the following items:

- unaccompanied baggage
- aircraft supplies
- clothing/parachutes
- construction equipment
- signal corps supplies
- vehicles and parts
- household goods
- fuel and lubricants
- office-school supplies
- printed forms
- aircraft supplies

Can the Government be seriously contending that this does not look like cargo suited for ocean transportation? Indeed, Plaintiff will present testimony at trial that these were categories of cargo that, in a series of government contracts including the one at issue in this case, Plaintiff had regularly carried.

## CONCLUSION

For the foregoing reasons, Plaintiff asks that its Motion In Limine be granted by the Court.

Respectfully submitted,

Dated: April 30, 2008

/s/ Richard D. Gluck
Richard D. Gluck
Harold G. Bailey, Jr.
Garvey Schubert Barer
1000 Potomac Street, NW, 5th Floor
Washington, DC 20007
Counsel for Samson Tug and Barge Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2008, a copy of Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion In Limine was served electronically and by first class mail, postage prepaid to the following:

>Jeanne M. Franken, Esq.
>Trial Attorney
>Torts Branch, Civil Division
>U.S. Department of Justice
>7-5393 Federal Building
>P.O. Box 36028
>San Francisco, CA  94102-3463
>
>United States Attorney
>Federal Building and U.S. Courthouse
>222 West Seventh Avenue, #9, Room 253
>Anchorage, Alaska  99513-7567

>/s/ Richard D. Gluck
>Richard D. Gluck