UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| **SAMSON TUG AND BARGE CO., INC.,** ) | | |
| ) | | |
| Plaintiff/Appellant, ) | 3:03-cv-00006 JWS | |
| ) | | |
| vs. ) | **ORDER AND OPINION** | |
| ) | | |
| **UNITED STATES OF AMERICA,** ) | [Re:   Motion at Docket 72] | |
| ) | | |
| Defendant/Appellee. ) | | |
| ) | | |

## I.  MOTION PRESENTED

At docket 72, defendant United States of America ("United States") filed a motion *in limine*, arguing that this court should exclude and/or limit certain anticipated testimony by witnesses expected to be called by plaintiff Samson Tug and Barge Co. ("Samson") at trial.  Samson responded at docket 78, and the United States replied at docket 80.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Samson filed this appeal from the contracting officer's decision pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 603, *et seq*.  Because the underlying contract is a maritime contract, this court, rather than the Court of Claims, has jurisdiction.[1]  Samson entered a series of contracts to provide marine transportation services to the Department of the Navy relating to the Naval Air Station located at Adak,

---

[1] *Southwest Marine of San Francisco, Inc. v. United States*, 896 F.2d 532, 535 (Fed. Cir. 1990).

Alaska. This litigation involves the last of those contracts, Contract No. N62387-95-D-8053 ("Contract") which was a "requirements" contract obligating the Department of the Navy to ship all cargo of the specified description between Adak and the Pacific Northwest pursuant to the Contract. Samson alleges that the United States breached the Contract by shipping a "substantial volume" of cargo that should have been shipped under the Contract by other means.

In the motion at hand, the United States argues that witnesses not disclosed in a timely fashion by Samson should be excluded, that testimony by witnesses on subjects for which Samson failed to produce a witness in response to a properly noticed and convened deposition pursuant to Fed. R. Civ. P. 30(b)(6) should be excluded, and that plaintiff's proposed damage expert, George Johnson, should not be permitted to testify beyond the scope of his alleged expertise, or render opinions contained in a report he produced after expiration of the deadline for submission of expert reports.

### III.  DISCUSSION

**A. Undisclosed Witnesses**

The United States argues that Samson should not be allowed to call witnesses at trial whose names were provided after the deadline for submission of witness lists. Samson disclosed two additional witnesses, Gerry Norman and Andy Strahl, in a list filed at docket 66 on November 26, 2007, long after the deadline for the final witness lists. Samson did not request leave to make the late disclosure, and in its opposition to the pending motion offers no excuse for the late disclosure. Samson simply argues that neither side sought to depose any witness based on their inclusion on the other's timely filed witness lists and that at the time of the late disclosure trial had not been scheduled. This appears to be an argument that the failure to act timely was harmless, however, the United States points out that it had already deposed several witnesses identified in the initial disclosure, and that because others were employees of the United States, it had no need to depose them. Further, this court notes that when the supplemental witness list was filed on November 26, 2007, the frequently extended discovery deadline

had passed three days earlier on November 23, 2007.[2]  Equally important, the court's scheduling and planning order very explicitly advised the parties that only those persons disclosed on the final witness list would be permitted to testify at trial.[3]  Samson's disclosure of Messrs. Norman and Strahl was untimely; neither will be permitted to testify at trial.

**B. Rule 30(b)(6) Dispute**

The United States alleges that Samson improperly refused to produce witnesses in response to its Rule 30(b)(6) request.  The United States did not move to compel production of a witness after Samson wrote a letter refusing to produce witnesses.  Instead, the United States convened a deposition at which no representative for plaintiff appeared.

The United States' Rule 30(b)(6) request covered the following topics:

1.  the factual basis for the contention that a diversion of "contract cargo" occurred,                                                              ,

2.  the factual basis for the contention that such a diversion by air occurred,

3.  the factual basis for the contention that the United States induced Samson to bid on the contract at issue by agreeing to ship "all military and military sponsored cargo" with Samson,

4.  the factual basis for claim for attorneys' fees and costs under EAJA,

5.  The amount of claim of attorneys' fees and costs, and the support for each,

6. the factual basis for the contention that the denial of the claim was baseless.[4]

These six items fall into two categories:  substantiative issues in dispute, and attorneys' fees under the Equal Access to Justice Act.  In its response to the Rule 30(b)(6) request written on July 20, 2007, Samson stated that "Plaintiff's position is that Defendant has already deposed George Baggen and John Mead, the appropriate Samson designees regarding these matters . . . and you were free to inquire, and did inquire at length, *inter*

---

[2]Doc. 65.

[3]Doc. 6, p. 2, item (4).

[4]Doc. 72-2 at 2.

*alia*, as to their knowledge of the basis for the 'contentions'" as requested in paragraphs 1, 2, 3, and 6 of the Rule 30(b)(6) request.[5] The letter further stated that "there is no one at Samson who is really in a position to testify meaningfully as to Samson's entitlement to fees and costs under EAJA," and that such exploration is "premature."[6]

By naming both George Baggen and John Mead as the "appropriate Samson designees" in these matters, Samson has endorsed their testimony for Rule 30(b)(6) purposes regarding the substantive topics (paragraphs 1, 2, 3, and 6). Regarding the attorneys' fees issue, the court concludes that resolution of any dispute over the law respecting the applicability of the EAJA will not require consideration of witness' testimony, and the court agrees with Samson that prior to the conclusion of trial it would be premature to explore any factual dispute over the appropriate quantum of attorneys' fees. In summary, the court declines to exclude any testimony by George Baggen and John Mead on the matters discussed in the Request for Production paragraphs 1, 2, 3, and 6, and the court will address the EAJA issues in the customary manner after the outcome of the trial is known.

**C. Expert Testimony of George Johnson**

   **1. Timeliness**

The United States asks the court to exclude testimony from Samson's expert, George Johnson, which relates to opinions offered in his supplemental expert report in which he allegedly "raised completely new issues and opinions concerning the carriage of air cargo"[7] The supplemental report was served in November 2007, months after the frequently extended deadline for submission of expert reports on July 20, 2007.[8]

---

[5]Doc. 78-1 at 2.

[6]Doc. 78-1 at 2.

[7]Doc. 72 at 4.

[8]Doc. 61. The United States also complains that Sampson did not file its expert reports. In using the form order prepared by the parties, the court inadvertently indicated that Sampson should **file** expert reports by July 20, 2007. This court does not require "filing" of expert reports or other discovery materials except when used to support a motion. *See* the court's standard pre-trial order used in this case. Doc. 6 at 2, item (1). *See also*, Fed. R. Civ. P. 26(a)(4) which

The United States deposed Johnson on May 23, 2007, and deposed him again on November 16, 2007, after the United States' expert, Ernest Nadel, had produced his report and been deposed. Johnson attended Nadel's deposition, read his report, and prepared a supplemental report addressing opinions in Nadel's report and deposition.[9] This supplemental report dated November 9, 2007, was referenced in the November 16, 2007 deposition of Johnson.[10] While the United States objects to the supplemental report, its attorney questioned Johnson regarding its contents.[11] The United States' assertion that it is somehow prejudiced by having the benefit of a written report showing how Johnson might be able to rebut Nadel if called as a rebuttal witness at trial is not persuasive. If anything, the United States has had a benefit that often would not be available. That is, the defendant had a chance to depose a witness on what would ordinarily first be heard only after the close of defendant's case as rebuttal testimony.

The lack of merit in the United States' timeliness argument is underscored by Rule 26. Rule 26(a)(2)(D) and Rule 26(e) specifically contemplate the supplementation of expert reports. Rule 26(e)(2) says that for an expert whose report must be disclosed, it is a "party's duty to supplement . . . information included in the report and . . . information given during the expert's deposition." Rule 26(e)(2) goes on to state: "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."[12] Here, the court set no express deadline for supplementation, so the default deadline established by the rule would apply. That default deadline is "at least 30 days before trial."[13] The supplemental report was provided considerably more than 30 days prior to trial. The United States'

---

requires service, but not filing, of materials such as expert reports which fall within the ambit of Rule 26(a). The court ascribes no significance to the failure to "file" expert reports.

[9] Doc. 78 at 5.

[10] Doc. 72-6 at 5.

[11] *Id.*

[12] *Id.*

[13] Fed. R. Civ. P. 26(a)(3)(B).

argument to exclude testimony relating to the opinions in the supplemental report based on timeliness of the supplement lacks merit.

### 2. Admissibility of Johnson's Expert Testimony

The United States further questions whether "Mr. Johnson, a certified public accountant, has the required bona fides to arrive at the conclusions he advances" in the supplemental report.[14] It requests that "portions of proposed trial testimony and the entirety of his last report" should be excluded on this basis under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*[15] Specifically, the United States argues that Johnson should not be allowed to testify as to the subject of carriage of cargo by air to and from Adak and the "interpretation of military documentation pertaining thereto."[16]

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To be admissible, expert testimony must be both relevant and reliable.[17] The district court is expected "to determine reliability in light of the particular facts and circumstances of the particular case."[18] As noted in the briefing, because this case will involve a bench trial, the court's "gatekeeper" function is lessened. The Seventh Circuit has explained that, "where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or

---

[14] Doc. 72 at 4.

[15] 509 U.S. 579 (1993).

[16] Doc. 72 at 4.

[17] *Daubert*, 509 U.S. at 589.

[18] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158 (1999).

disregard it if it turns out not to meet the standard of reliability established by Rule 702."[19]

Here, Johnson appears to be offered as an expert on the quantification of damages. His *curriculum vitae* indicates that he is well qualified to testify to the calculation of damages generally, and the United States does not appear to challenge his expertise regarding the calculation of damages generally. That to which it does object is Johnson's proposed testimony regarding carriage of cargo by air to and from Adak, and the interpretation of related military documents. Johnson's supplemental report appears to be based on documents supplied to plaintiff through FOIA requests and discovery regarding government flight data.[20] Johnson stated in his deposition that he relied on defendants' own expert, Nadel, for some information, as well as the internet for information regarding the planes used to carry air cargo.[21]

Johnson's report indicates that his calculations were based on information which in some instances might be incomplete, but the United States does not appear to challenge the sufficiency of the data Johnson used. Rather, the United States argues that Johnson lacks necessary expertise concerning carriage of cargo by air such that he cannot testify regarding the diversion of contract cargo to air shipment. Johnson does not claim expertise in cargo logistics. He simply uses available information to estimate air cargo capacity, air cargo shipped, and the type of air cargo shipped to calculate damages. The court would be more concerned about admitting his testimony if this were a jury trial, for some of the logistical issues involved in his estimates may be beyond his expertise. On the other hand, this is a bench trial and the court will expect Samson to lay an adequate factual foundation for Johnson's opinions, and to the extent it fails to do so, his opinions will be discounted or rejected.

The United States also contends that Johnson does not have the proper expertise to understand military documents referring to air cargo shipment. The United

---

[19] *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006).

[20] Doc. 72-6 at 1.

[21] Doc.72-5 at 34 - 36.

States does not state what documents produced during FOIA and discovery might be difficult to understand, or beyond Johnson's ability to comprehend. This argument is not specific enough to warrant exclusion of the testimony at this point. If it is demonstrated at trial that Johnson really does not understand the underlying documents, of course his opinions will be treated accordingly.

The United States also argues that Mr. Johnson did not follow "any methodology at all," in his supplemental report. This assertion is not convincing. For instance, in the report Johnson stated that he employed the same methodology as Dr. Nadel "concerning the cargo capacity of the various types of aircraft."[22] It has not been demonstrated that Johnson is unable to understand Nadel's approach, and the United States certainly is not attacking its own expert's methods.

In summary, in this bench tried case, the court is not prepared to exclude Johnson's analysis and opinions as unreliable, or irrelevant in advance of trial. As the evidence comes in, the court may modify it present view, which is that the attacks on Johnson go to the weight to be ascribed to his testimony rather than to its admissibility.

### V.  CONCLUSION

In keeping with the discussion above, the motion at docket 72 is **GRANTED in part** such that Gerry Norman and Andy Strahl will not be permitted to testify, and **DENIED in part** as to all other relief sought.

DATED at Anchorage, Alaska, this 6th day of August 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[22] Doc. 72-6 at 3.